UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:  BRANDON FRAZIER                                              Case No. 19-10105-JDW
                                                                     Chapter 7 Proceedings

**RESPONSE OF GULFCO OF MISSISSIPPI TO DEBTOR'S MOTION TO AVOID NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST**

Gulfco of Mississippi, LLC, doing business as Tower Loan of New Albany (Tower), files this Response of Tower Loan to Debtor's Motion to Avoid Nonpossessory, Nonpurchase-Money Security Interest as follows:

1. Tower denies that all of the property in which it has a security interest is subject to lien avoidance under 11 U.S.C. §522(b). Tower denies that all such possessions are exempt and objects to debtor's claim of exemption for that property that is not exempt pursuant to Miss. Code Ann. §85-3-1, et seq., or other applicable law.

2. Tower further requests that if Debtor is not required to pay for the value of the collateral, that the Trustee be ordered to abandon any property whose lien has not been avoided from the estate.

WHEREFORE, Tower requests that this Court deny the motion of the Debtor and to grant other such relief as the Court may deem proper and just.

Dated this ____6th____ day of March, 2019.

                                                                     GULFCO OF MISSISSIPPI, LLC


                                                                     By: /s/ Rebecca Guion Burton
                                                                         Its Attorney

## CERTIFICATE OF SERVICE

  I do hereby certify that I have this day electronically filed with the Clerk of Court using the ECF system which sent notification, or mailed, via U.S. Mail, postage fully prepaid to non-ECF participants, a true and correct copy of the foregoing Response of Tower Loan to Debtor's Motion to Avoid Nonpossessory, Nonpurchase-Money Security Interest to the following:

| | |
|---|---|
| Karen B. Schneller<br>karen.schneller@gmail.com | Office of the U.S. Trustee<br>USTPRegion05.AB.ECF@us.doj.gov |

Stephen Smith<br>
stephen@smithcpafirm.com<br>
Chapter 7 Trustee

Dated this the _6th_ day of March, 2019.

By: /s/ Rebecca Guion Burton<br>
Its Attorney

Prepared By:

Rebecca Guion Burton
MSB#: 105059
406 Liberty Park Court
P. O. Box 320001
Flowood, MS  39232-0001
Email: gburton@towerloan.com
Telephone: 601-992-0936
Facsimile: 601-992-5176

# MS. INSTALLMENT LOAN AGREEMENT AND DISCLOSURE STATEMENT

| LOAN NUMBER | BORROWER NAME | ADDRESS |
|---|---|---|
|  | BRANDON FRAZIER | 404 MISSISSIPPI STREET, NEW ALBANY MS 38652- |
| DATE OF LOAN | CO-BORROWER NAME | ADDRESS |
| 02-01-18 | CO-BORROWER NAME | ADDRESS |

**ITEMIZATION OF AMOUNT FINANCED UNDER FEDERAL LAW OF** $ 2389.44
- Amount given to you directly: $ 346.25
- Amount paid on your account: $ 1788.59
- Amounts paid to others on your behalf (we may be retaining a portion of this amount):
  - Public officials: $ 18.00
  - Insurance company: $ .00
  - Credit Life: $ .00
  - Credit Disability: $ .00
  - Credit Property: $ 236.60

**Lender:** GULFCO OF MISSISSIPPI, LLC DBA TOWER LOAN OF NEW ALBANY
P.O. BOX 650, NEW ALBANY, MS, 38652

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Schedule of Consecutive Monthly Payments | |
|---|---|---|---|---|---|
| 40.89% | $1250.56 | $2389.44 | $3640.00 | Number of payments: 26 | Amount of each payment: 140.00 |
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled | 1st Payment Due: 03/03/18 | Last Payment Due: 04/03/20 |

Closing Fee: $ 145.60
Subtotal of above amounts: $ 2535.04
LESS Prepaid Finance Charge: $ 145.60
Amount Financed (TOTAL): $ 2389.44

**SECURITY:** You are giving a security interest in Personal Property

Collateral securing this and other loans you have with us also secures other and future indebtedness

**LATE CHARGE:** If a payment is more than 15 days late, you will be charged the greater of $5.00 or 4% of the payment, not to exceed $50.00

**FILING FEES:** $ 18.00

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge.

See your Promissory Note and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**INSURANCE:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the annual cost

| TYPE | DEC. C.L. | LVL. C.L. | PREMIUM | | SIGNATURES | | |
|---|---|---|---|---|---|---|---|
| Single Credit Life | | | $ | I/We want credit Life Insurance | X | X: | X: |
| Joint Credit Life | | | $ | We want credit Life Insurance | X | X: | X: |
| Credit Disability | | | $ | I want credit disability insurance | X | | |

You may obtain property insurance from anyone you want, provided the insurance company is acceptable to the creditor. If you get personal property insurance from or through the creditor, you will pay $ 236.60
☒ Dual Interest
☐ Single Interest

**DISCLOSURES REQUIRED BY MISSISSIPPI LAW:**
Excluding the closing fee of $ 145.60 from the finance charge, the state finance charge is $ 1104.96 and the state contract rate is 34.67 %

## PROMISSORY NOTE AND SECURITY AGREEMENT
### ALL INFORMATION IN THE ABOVE DISCLOSURE STATEMENT IS INCLUDED HEREIN BY REFERENCE

**PARTIES:** "Borrower" means all Borrowers signing below whether one or more; and "Lender" means the Lender named above.
**NOTE:** For value received, Borrower, jointly and severally, promises to pay to the order of Lender the "Total of Payments" (see above), in the monthly payments stated in the "Schedule of Payments" (see above) until paid in full. Any extension, renewal, renewals, or other indulgences by Lender shall not release Borrower. Borrower waives protest.
**LATE CHARGE:** Borrower shall pay Lender a late charge, the greater of $5.00 or 4% of the payment on any payment that continues unpaid for more than fifteen (15) days following its due date, but Borrower shall not pay more than $50.00 on any one scheduled payment.
**PREPAYMENT REFUND:** When Borrower prepays this loan in full, then: (i) if paid by a renewal loan from Lender within 30 days from the date of this loan, Lender shall cancel or refund all of the above finance charges, closing fee and credit insurance premiums on this loan, (ii) if paid by a renewal loan from Lender after 30 days, but before 90 days from the date of this loan, Lender shall refund the unearned finance charges computed by the actuarial method; (iii) if paid or renewed after 90 days from the date of this loan, Lender shall refund the unearned finance charges computed by the Rule of 78s based on the number of days Borrower pays early, less 20 days.
**SECURITY INTEREST:** To secure payment of this loan, Borrower grants Lender a security interest in the property described below under "Security."
**BORROWER'S DUTIES:** If Lender requests, Borrower shall maintain fire, theft, and extended coverage insurance on the security. Such insurance policies shall be payable to Lender and Borrower as Borrower's interest shall appear and shall provide Lender with at least ten (10) days written notice before cancellation. In addition, Borrower shall keep the security at Borrower's address shown above, in good repair and free from adverse liens and security agreements.
**DEFAULT:** Borrower defaults when: (i) Borrower does not pay any payment in full when due; (ii) Borrower does not fully perform any of Borrower's duties under this agreement; (iii) Borrower moves the security without first giving Lender written notice; (iv) Borrower abandons the security; (v) any of the security is lost, stolen, not maintained, destroyed, or substantially damaged; (vi) Borrower death or incompetency; (vii) Borrower defaults under another Tower Loan agreement; or (viii) Lender reasonably deems itself insecure.
**REMEDIES:** When Borrower defaults, Lender can take one or more of the following actions: (i) cancel any credit insurance and apply unearned premiums to the account; (ii) in accordance with the arbitration agreement, bring suit for or arbitrate the delinquent payments; (iii) accelerate and declare due, without notice or further demand for payment, the remaining balance (but in such event, upon receiving full payment, Lender shall rebate the unearned finance charge on the date of payment by using the method described in Prepayment Refund (above); (iv) repossess and dispose of any security as a secured party under the Mississippi Uniform Commercial Code; and/or (v) foreclose on any securing deed of trust on realty. Ten (10) days notice by regular mail to Borrower at the above address shall be reasonable notice to Borrower of any disposition of any security. Lender may hire or pay an attorney to help collect the Note or recover its collateral if Debtor does not pay or if Debtor files bankruptcy. Debtor will reimburse Lender for these costs. This includes, subject to limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to lift, modify, or vacate any automatic stay or injunction), for defending against unsuccessful counterclaims, and appeals.
**OTHER INDEBTEDNESS:** The security agreement secures all other and future indebtedness Borrower owes to Lender. Collateral securing other loans Borrower has with Lender also secures this loan.
**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.
**GOVERNING LAW:** The construction, validity and enforcement of this loan agreement shall be governed by the laws of the State of Mississippi, without regard to the principles of conflicts of laws.
**SEVERABILITY:** The illegality or unenforceability of any provision of this Promissory Note and Security Agreement or any instrument or agreement entered into in connection herewith including, without limitation, shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Promissory Note and Security Agreement, the Arbitration Agreement or any other instrument or agreement entered into in connection herewith.
**SECURITY:** The security to which the security interest granted hereunder attaches is indicated below and is more particularly described as follows:
VALUE: We represent to you the value of any personal property security below is ........................ $ 4000.00

This value excludes the value of any motor vehicles, livestock, boats or mobile homes
43" LG FLATSCREEN TV (2ND), 55" RCA FLATSCREEN TV (3RD), CRAFTSMAN TOOLBOX, APPLE IPAD MINI TABLET, XBOX ONE GAMESYSTEM, XBOX ONE GAMESYSTEM (2ND), COLLECTION OF XBOX ONE GAMES, NIKON DIGITAL SLR CAMERA, 14KT GOLD NECKLACE, 10KT GOLD NECKLACE (2ND).

**ARBITRATION AGREEMENT:** BY SIGNING BELOW AND OBTAINING THIS LOAN, BORROWER AGREES TO THE ARBITRATION AGREEMENT ON THE ADDITIONAL PAGES OF THIS AGREEMENT. YOU SHOULD READ IT CAREFULLY BEFORE YOU SIGN BELOW. IMPORTANT PROVISIONS, INCLUDING OUR PRIVACY POLICY, ARE CONTAINED ON ADDITIONAL PAGES AND INCORPORATED HEREIN.

_____        _____        _____
BORROWER                                            BORROWER                                              BORROWER

THIS DOCUMENT IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF BANK OF AMERICA, N.A., AS AGENT

MS (rev 11/2017)

## ARBITRATION AGREEMENT

**Read Carefully.** This agreement limits your rights to use the court to address claims and disputes.
"Borrower" means all Borrowers signing the Installment Loan Agreement. "Lender" means the Lender named on the Installment Loan Agreement.

Arbitration is a method of resolving disputes between parties without going to court. Borrower and Lender agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Borrower were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. Borrower and Lender understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

Borrower and Lender agree that they shall arbitrate all disputes between them on the following terms:
(1) This arbitration agreement applies to all claims and disputes between Borrower and Lender. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or the to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
 - The loan Borrower is obtaining from Lender today and any other loans or retail installment contracts with Lender;
 - Any insurance purchased in connection with this loan or any previous loan or retail installment sales contract;
 - Any auto club membership or other product or service purchased in connection with this loan;
 - Whether the claim or dispute must be arbitrated;
 - The validity of this arbitration agreement;
 - Any negotiations or discussions between us;
 - All claims or disputes based upon Federal or State laws or regulations;
 - Class action types of claims and consolidated claims;
 - Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.
(2) This arbitration provision or agreement also applies to all disputes and claims between Borrower and Lender, Lender's agents, employees, affiliated corporations and the employees or agents of these affiliated companies. Some of our affiliated companies include American Federated Insurance Company, American Federated Life Insurance Company, First Tower Loan LLC, Tower Loan of Mississippi LLC, Gulfco of Mississippi LLC, Gulfco of Alabama LLC, Gulfco of Louisiana LLC, Tower Loan of Missouri LLC, and First Tower LLC. The foregoing are separate companies that also are affiliated corporations.
(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.
(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.
(5) The arbitration shall be held in Rankin County, Mississippi, unless the Borrower requests in the demand for arbitration or the answering statement, the arbitration be held in his, her, or its county of residence or principal place of business.
(6) Except as they conflict with this arbitration provision and with the Federal Arbitration Act, all arbitrations under this provision shall follow the procedures set forth in the Federal Arbitration Act, which are incorporated by reference.
(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.
(8) Neither party shall be required to arbitrate claims or matters wherein the total amount at issue or in dispute (inclusive of attorneys fee, costs or any punitive damages) is less than $10,000. Lender is not required to initiate arbitration proceedings before repossessing collateral, instituting executory process, or foreclosing upon real property. However, disputes arising out of or relating to ordinary process or lender seeking a money judgment or pursuing seizure, sale, and other foreclosure remedies, executory process or repossession of collateral shall be arbitrated.
(9) If either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.
(10) Borrower and Lender hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.
(11) Borrower and Lender agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.
(12) Once the arbitrator has rendered a decision, either Borrower or Lender may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator.
(13) This agreement does not effect or extend any applicable statutes of limitation.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.**

By making this loan, Lender binds itself to this arbitration agreement.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
First Tower Corp    601-992-0153

**B. EMAIL CONTACT AT FILER (optional)**
dale@towerloan.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

FIRST TOWER CORP.
P O BOX 320001
FLOWOOD, MS  39232-0001

**File Number**
Date Filed: 2/9/2018 9:10:45 PM
C. Delbert Hosemann, Jr.
Secretary of State

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| FRAZIER | BRANDON | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 404 MISSISSIPPI STREET | NEW ALBANY | MS | 38652 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| GULFCO OF MISSISSIPPI, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 650 | NEW ALBANY | MS | 39568 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
40" LG FLATSCREEN TV (2ND), 55" RCA FLATSCREEN TV (3RD), CRAFTSMAN TOOXBOX, APPLE IPAD MINI TABLET XBOX ONE GAMESYSTEM, XBOX ONE GAMESYSTEM (2ND), COLLECTION OF XBOX ONE GAMES, NIKON DIGITAL S CAMERA, 14KT GOLD NECKLACE, 10KT GOLD NECKLACE (2ND),

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad Item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

Date of Contract: 9/16/2017

# RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT

## BUYER

| LAST NAME | FIRST | INITIAL | ACCOUNT NUMBER |
|---|---|---|---|
| Fralzer | Brandon | | |

| LAST NAME | FIRST | INITIAL | |
|---|---|---|---|
| | | | |

STREET ADDRESS: 404 Mississippi St
CITY: New Albany   STATE: MS   ZIP: 38652

## SELLER

| NAME | SALESMAN |
|---|---|
| Thomas Wholesale | |

STREET ADDRESS: 922 Hwy 15 N
CITY: New Albany   STATE: MS   ZIP: 38652

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. | Total Sale Price  The total cost of your purchase on credit, including your downpayment of $ 0.00 |
|---|---|---|---|---|
| 23.98 % | $ 214.97 | $ 799.99 | $ 1,014.96 | $ 1,014.96 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 24 | 42.29 | Monthly Beginning 10/16/2017 |

**Security:** You are giving a security interest in the goods or property being purchased.
**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.
**Late Charge:** If a payment is more than 15 days late, you will be charged 4% of the payment amount or $5.00, whichever is greater.

See your contract documents for any additional information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (Including sales tax) — $ 799.99
2. Cash Downpayment — $ 0.00
   Total Downpayment — $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A — $ 0.00
   b. N/A — $ 0.00
   Total Paid to Others on Your Behalf — $ 0.00
4. Unpaid Balance (1-2+3) — $ 799.99
5. Amount Financed (4) — $ 799.99

## DESCRIPTION OF GOODS OR SERVICES (collectively, the "GOODS")

See Invoice

SEE ATTACHED INVOICE

## INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

**PARTIES:** "Buyer" means all Buyers signing this contract whether one or more; "Seller" means the Seller signing this contract and any successors and assigns thereof, including without limitation any creditor that purchases this contract.
**NOTE:** For value received, pursuant to the terms and conditions hereof (including those on the additional pages of this contract), Buyer purchases the Goods described above and agrees to pay to the order of Seller or Seller's assignee, at the office of the holder of this contract, the Total of Payments according to the schedule of payments set out above. If there is more than one Buyer, then each agrees that they are jointly and severally liable for payment of the Goods described above.
**DEFAULT:** Buyer shall be in default hereunder when: (i) Buyer defaults in payment or performance of any obligation or covenant herein; or (ii) upon loss, theft, substantial damage or destruction of the Goods; or (iii) when Seller reasonably deems itself insecure.
**REMEDIES:** Upon default, and if required, at any time thereafter, Seller may (i) declare the entire unpaid balance immediately due and payable, at the option of the holder hereof, without notice or demand; and (ii) cause all or any part of the Goods to be seized and sold under nonjudicial foreclosure or sale, or executory or other legal process issued by any court of competent jurisdiction, with or without appraisement, at the option of the holder, to the highest bidder for cash. Buyer shall pay all costs of collection, including court costs and reasonable attorney's fees.
**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.

**TITLE:** Title to said Goods shall not pass to Buyer until the balance is fully paid. In consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the undersigned (whether one or more) has granted, and by these presents does hereby grant unto Seller a purchase money security interest pursuant to Section 9-309(1) of the Revised Article 9 of the Uniform Commercial Code, in the Goods and any and all additions and accessories thereto and proceeds and products thereof to secure the payment in performance of Buyer's obligations hereunder.
**CREDITORS:** If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Mississippi LLC, ("Tower"), P.O. Box 320001, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**REFUND FOR REPAYMENT IN FULL:** If the Total of Payments is paid in full before the final payment date, Buyer may receive a Partial Refund of the unearned finance charge based upon the Rule of 78s.
**LATE CHARGE:** Buyer shall pay Seller late payment charges equal to $5.00 or 4% of the amount delinquent on any amount that is more than 15 days past due, whichever is greater.

**FINANCE CHARGE REFUND OPTION (Dealer checks one if applicable)** [ ] 90 days  [ ] 180 days  [X] 365 days  [ ] 730 days.
If one of the boxes above are checked, then the following additional terms apply: If Buyer pays the entire Amount Financed set forth above and any late fees within the number of days shown in the box checked above (the "Option Period") Seller shall refund to Buyer all finance charges paid by Buyer. During the Option Period, Buyer must timely make all scheduled payments, and failure to do so is a default under this contract. In addition to all other remedies available to Seller upon Buyer's default, if, during the Option Period, Buyer fails to make any scheduled payment within thirty (30) days after its scheduled due date, the finance charge refund option shall automatically terminate, and Seller shall have no obligation to refund any finance charges to Buyer under such option. The Option Period starts on the date the contract is signed.

Buyer shall keep the Goods free from any adverse lien, security interest, or encumbrance and in good order and repair. Buyer shall not use the Goods in violation of any law, and Buyer shall not sell or transfer the Goods without the written consent of Seller.

Said Goods will be located and situated at the residence of Buyer(s) as shown above, unless otherwise state herein _____ and shall not be removed from the premises, nor in any way disposed of without the written consent of the Seller. The undersigned further covenant and agree to keep the Goods fully insured against loss by fire, theft and collision or other casualty (as applicable) loss, if any, payable to Seller as his interest may appear. Buyer shall pay promptly when due all taxes and assessments upon the Goods. Seller may inspect the Goods at any time, wherever located.

At its option, Seller may discharge taxes, liens, security interest, and other encumbrances on the Goods, may pay for the insurance coverage on the Goods and may pay for the maintenance and preservation of the Goods. Buyer shall reimburse Seller on demand for any such payments made by Seller, and Seller shall be entitled to interest on such payments at 12% per annum.

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT.

MS RISC 01/16                                                                                           PAGE 1 OF 3 PAGES

**READ THIS ARBITRATION AGREEMENT CAREFULLY.** This arbitration agreement limits your rights to use the Courts.

By making this loan, Lender binds itself to this arbitration agreement.

The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

Arbitration is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:

(1) This arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
- The consumer credit contract Buyer is obtaining from Seller today and any other retail installment contracts with Seller;
- Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
- Any other product or service purchased in connection with this consumer credit contract;
- Whether the claim or dispute must be arbitrated;
- The validity of this arbitration agreement;
- Any negotiations or discussions between us;
- All claims or disputes based upon Federal or State laws or regulations;
- Class action types of claims and consolidated claims;
- Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.

(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties, The Parties agents, employees, affiliated companies and the employees or agents of these affiliated companies.

(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.

(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.

(5) The arbitration shall be held in Rankin County, Mississippi, unless the Borrower requests in the demand for arbitration or the answering statement, the arbitration be held in his, her, or its county of residence or principal place of business.

(6) Except as they conflict with this arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.

(7) This arbitration provision or agreement applies even if borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.

(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys fees and costs). Seller is not required to initiate arbitration before repossessing or foreclosing upon collateral. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.

(9) If either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in Item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.

(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.

(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.

(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator.

This agreement does not affect or extend any applicable statutes of limitation

By: _____
Thomas Wholesale Furniture  *Witness*
Seller

_____
Buyer

_____
Buyer

This document is subject to a security interest in favor of BANK OF AMERICA, N.A., AS AGENT.

Buyer has read and understands all of the additional terms continued on all of the pages hereof and agrees that they are part hereof as if set forth at this point.

This agreement consist of 3 pages.

MS RISC 01/16

PAGE 2 OF 3 PAGES

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to ____TOWER LOAN____ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and or the Federal Reserve Board on consumer credit, the Gramm Leach Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are true and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for rebate, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim, or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and all attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase the contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the ____27____ day of ____Sept____ 2017

Thomas Wholesale Furniture

By: _____ Seller

MS RISC 01/18

PAGE 3 OF 3 PAGES

# INVOICE

*Nolan*

Thomas Wholesale Furniture
922 Hwy 15
New Albany, MS 38652
United States

**BILL TO**
Brandon Fraizer
404 Mississippi Street
New Albany, Mississippi 38652
United States

Invoice Number:
Invoice Date:    September 16, 2017
Payment Due:    September 16, 2017
Amount Due (USD):    $799.99

| Product | Quantity | Price | Amount |
|---|---|---|---|
| 799 Sofa and Love Brown | 1 | $839.99 | $839.99 |

Total: $839.99
Payment on September 16, 2017 using cash: $40.00
Amount Due (USD): $799.99

**Notes**
ALL EXCHANGES AND CANCELLATIONS ARE SUBJECT TO SELLER APPROVAL. A fee of 20% of the purchase price will be assessed (re-stocking fee) on seller approved returns, exchanges, or cancellations. Availability of merchandise is estimated according to information on hand at time when order is written. Seller shall not be responsible for delays in delivery of merchandise occasioned by manufacturers or any other cause beyond the control of the seller. Buyer assumes all risk of merchandise picked up. Buyer agrees to measure doorways and stairways before ordering, as seller is not responsible for merchandise to large to fit. SELLER CAN DESIGNATE A DAY FOR DELIVERY, however cannot guarantee a set time. Seller cannot, move, haul, or rearrange old furniture. Extra care will be given, but seller will not be responsible for damage to property during delivery. LAYAWAYS ARE NOT SUBJECT TO CANCELLATION. Buyers agrees to 90 day payment term, with 20% down payment. Buyer agrees to complete payment during period, or proceeds of prior payments towards layaway may be forfeited.

Buyer authorizes above order:

Merchandise received: